IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DAVID GARY BURTON, <br><br> Defendant. | CR 12–18–H–DLC <br><br> ORDER |

Defendant David Burton filed a motion to suppress the evidence relating to an investigatory stop of his vehicle on December 17, 2011, and a motion in limine to exclude testimony regarding voice identification from the Bowser's Casino robbery. United States Magistrate Judge Jeremiah C. Lynch issued findings and recommendations on June 4, 2013, recommending Defendant David Burton's motion to suppress be granted and his motion in limine be denied. (Doc. 43.) The United States timely objected to the findings and recommendations and is therefore entitled to *de novo* review of the specified findings or recommendations

-1-

to which it objects. 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not specifically objected to will be reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.,* 656 F.2d 1309, 1313 (9th Cir. 1981). For the reasons stated below, this Court adopts Judge Lynch's findings and recommendations in full. Because the parties are familiar with the procedural and factual background of this case, it will not be restated here.

**I. Motion to Suppress**

The United States first objects to Judge Lynch's application of the facts to the reasonable suspicion standard. The United States' recitation of the relevant facts includes two facts that were not considered by Judge Lynch. The first is that law enforcement "requested a driver's license photograph of the defendant and likely viewed that photograph." (Doc. 45 at 5.) The government asserts this fact can be inferred because Deputy Weiss requested Defendant's driver's license photo be transmitted to his on-board computer prior to the investigatory stop. (Doc. 42-2 at 1.) Judge Lynch took the government's supposition that the deputies had seen a photograph of Defendant under close consideration, and found it lacking.

> Deputy Blythe testified that he had never seen a photograph of Burton before he initiated the traffic stop, and had no idea who was driving the vehicle. Doc. 36 at 13-14, 21. Deputy Gilberston did not recall ever seeing

> a photograph of Burton either, and similarly testified that he did not know
> who was behind the wheel of the white sedan until after they executed the
> stop. Doc. 36 at 26, 36. Deputy Weiss had no idea what Burton looked like
> either. While he and Deputy Blythe remembered seeing images of Burton
> on the Green Meadow Market's surveillance system video, those images
> were so poor that they could not identify him and could only see that he was
> a white male.

Doc. 43 at 16.

If Deputy Weiss had seen the driver's license photo of Defendant that he requested, he had every opportunity to testify as much at the suppression hearing. The record contains no such testimony, as pointed out by Judge Lynch. As Judge Lynch heard live testimony from Deputy Weiss at the suppression hearing and reviewed all the documents in the record, he is in the best position to determine what factual inferences are appropriate in this matter, and the Court agrees with his findings of fact. Further, even assuming Deputy Weiss did look at Defendant's driver's license photo, which appears contrary to his testimony, he was not the deputy who made the investigatory stop. Rather, he told Deputy Blythe to initiate the stop based upon Blythe's assumption that Defendant was driving the white sedan. Thus, the relevance of the government's requested inference is questionable at best. This objection fails to convince the Court that reasonable suspicion existed to perform an investigatory stop of the white sedan.

The second fact the government asks this Court to consider is not an

inference based upon the record before Judge Lynch, but instead is an entirely new document purportedly linking Defendant to a suspicious white sedan a year prior to the stop at issue. The government argues consideration of this record is permitted under Federal Rule of Criminal Procedure 59(b)(3) which allows the district judge to "accept, reject, or modify the recommendation, receive further evidence, or [ ] resubmit the matter to the magistrate judge with instructions." Assuming the Court can consider this submission as further evidence, its relevance to the issue at hand is again doubtful. The report is written by a Deputy Jason Crum who appears to have no connection to Defendant's current investigation. There is no evidence that any of the deputies who made the investigatory stop ever saw this report prior to stopping the white sedan over a year later. This new evidence does not convince the Court that Judge Lynch erred in concluding there was not reasonable suspicion to perform the investigatory stop in this case.

The government also challenges Judge Lynch's finding that Defendant's phone call to Deputy Weiss near the same time officers saw a white male enter Defendant's home did not establish reasonable suspicion. The United States posits that law enforcement would have had reasonable suspicion to stop the white sedan even if Defendant had not been driving, because officers are permitted to rely on mistaken facts so long as such mistakes are reasonable. The cases the

government cites do not apply to this stop, however, because the officers in those cases reasonably relied on mistaken facts, while the deputies here simply lacked the factual support to make a stop in the first place. The deputies did not rely on any mistaken yet reasonable beliefs–their belief that Burton was driving the white sedan was accurate. It just was not supported by enough evidence. The fact that a white male was driving the sedan and Burton called dispatch around the same time the white male was in Burton's residence does not equate to reasonable suspicion to stop the vehicle. If the phone call had been made from Burton's residence, thus linking him to scene, the government's case would be much stronger. As is, Burton's phone call could have been made from anywhere after being alerted by his wife that law enforcement wished to speak with him. Hence, there is no evidence connecting Burton to the white sedan apart from a white male going to his residence. This evidence is insufficient.

The government's argument that law enforcement would have had reasonable suspicion to stop whomever was driving the vehicle because he had been in Burton's home is likewise unavailing for the same reasons. The fact that Burton was on parole for burglary and was a suspect in further burglaries when the stop was made does not permit law enforcement to stop the vehicle of any male who enters his home. This argument still does not provide any connection

between Burton and the white sedan, which is the crucial missing link in the stop at hand.

The government next objects that Judge Lynch failed to consider that a probationer can be freely searched and questioned. Defendant's conditions of probation permitted suspicionless search, required him to inform his probation officer of his employment, and prohibited him from using drugs. The government contends that Officer Chvilicek's questioning regarding the Ford Bronco, after Burton had invoked his Miranda rights, was justified because it was related to his employment. The government does not explain how the questioning relates to Burton's employment as a self-employed roofer, however. Burton's large amount of cash was found in the white sedan, as were the Bronco's license plates, so it is unclear how Chvilicek's questions regarding the Bronco could have related to Burton's obligation to inform his probation officer of his current employment. This objection is unpersuasive.

Even if Chvilicek did violate Miranda, the United States contends that only Defendant's statement should be suppressed, not any evidence derived therefrom. The government argues that because Burton's statement to Chvilicek that he sold the Bronco to Rodney Trimble was voluntary and reliable, Trimble, witnesses disclosed by Trimble, and any evidence obtained therefrom should be admitted,

citing *Michigan v. Tucker*, 417 U.S. 433, 451-52 (1974) and *United States v. Patane*, 542 U.S. 630, 636 (2004).

*Tucker* involved a defendant who was arrested for rape. Prior to his interrogation, police asked him if he knew for what crime he was arrested, whether he wanted an attorney, and whether he understood his constitutional rights. *Tucker*, 417 U.S. at 436. Defendant responded that he knew why he was arrested, he <u>did not</u> want an attorney, and he understood his rights. *Id.* (*emphasis added*). This questioning preceded *Miranda v. Arizona*, but the defendant's trial came after *Miranda*, and the trial court suppressed the defendant's incriminating statements because he was not informed of his right to free legal counsel. *Id.* at 435. During questioning, the defendant told police he had been with a man named Henderson the evening of the rape. Henderson then testified against the defendant at trial and he was convicted. *Id.* at 437. The Supreme Court held that Henderson's testimony did not violate *Miranda*, focusing keenly on the fact that *Miranda* had not been issued when police questioned the defendant.

*Tucker* is distinguishable from Chvilicek's questioning in this case in two significant ways. First, Burton clearly said he wanted a lawyer when he was informed of his right to one, whereas Tucker said he did not need a lawyer. Second, *Miranda* had been in effect for almost 40 years when Chvilicek

questioned Burton after he invoked his right to an attorney. There was no confusion over whether Burton wanted an attorney present, and Chvilicek's questioning blatantly violated that right.

*Patane* held that the exclusionary rule articulated in *Wong Sun* does not apply to mere failures to warn defendants of their *Miranda* rights. 542 U.S. at 637. Thus, the physical evidence resulting from a defendant's voluntary statement may be introduced at trial. *Id.* at 634. Again, this case varies from *Patane* because it does not involve a failure to warn, and it also pertains to live witness testimony. Burton was advised of his *Miranda* rights, and then questioned after he invoked his right to an attorney. The government's reliance on *Tucker* and *Patane* is not persuasive.

The government next submits that both the location of the Ford Bronco and the existence of Rodney Trimble would have been discovered by law enforcement through independent means, and are thus properly admitted through the inevitable discovery doctrine. First, the government argues the license plates for the Bronco were in plain view in the white sedan, so law enforcement could have followed it and questioned Burton once he stopped, likely viewing the license plates at that time. Or, defendant's probation officer would have searched the white sedan at some point and would have discovered the license plates. Second, according to

the government, the Bronco would have been discovered through personal observation of the officers, or by running a registration check for the Bronco and discovering it was registered to Trimble's girlfriend. Finally, the United States argues Burton's wife, Mindy Harvey, told the deputies that Trimble was selling drugs to Burton, serving as another independent connection to Trimble.

All of these arguments regarding inevitable discovery of the Bronco and of Trimble were addressed by Judge Lynch in the findings and recommendations. This Court agrees that the record does not contain any evidence that law enforcement would have followed Burton and questioned him once he stopped his vehicle. Further, given Burton's prompt invocation of his *Miranda* rights, it is unlikely that he would have provided any information voluntarily. The government similarly failed to present any evidence that law enforcement would have located the Bronco through personal observation or by conducting a search of the Motor Vehicle Division records. Finally, Judge Lynch found that it was the deputies who brought up Trimble's name to Harvey. This Court agrees that it is mere speculation that Harvey would have independently brought up Trimble to law enforcement during questioning without the deputies' first broaching the subject. For these reasons, the Court concurs that the inevitable discovery doctrine does not apply to the Bronco or Trimble's identity.

Finally, the government contests the exclusion of the statements and testimony of Trimble, as well as two witnesses who were identified by Trimble; Joseph Morgan and Corey Jones. "[T]he exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object." *United States v. Ceccolini*, 435 U.S. 268, 280 (1978). A closer and more direct link between the illegal conduct by law enforcement and the testimony to be suppressed is required when excluding live-witness testimony. *Id.* at 278. Further, the more willing a witness is to testify, the more likely he will be discovered by lawful means, and the smaller the incentive for law enforcement to perform an illegal search. *Id.* at 276.

The Court is not sufficiently informed of the evidentiary links between Burton, Trimble, Morgan, and Jones to determine whether exclusion of their statements, or any other evidence, is appropriate under the standard outlined above. The Court will consider this issue if raised by motion prior to trial should the case proceed to that stage. Otherwise, and for the reasons stated herein, the Court adopts Judge Lynch's findings and recommendations regarding Defendant's motion to suppress in full.

## II. Motion in Limine

Judge Lynch found that Chvilicek's identification of Defendant's voice on the video recording of the Bower's casino robbery was sufficiently reliable to be admitted at trial. Neither party objected to this finding, so it is reviewed for clear error. No clear error being found, Judge Lynch's findings and recommendations regarding the motion in limine will be adopted, and Chvilicek's testimony regarding recognition of Defendant's voice on the video from the Bowser's casino robbery will be admitted.

Accordingly, IT IS ORDERED that Judge Lynch's findings and recommendations (doc. 43) are ADOPTED IN FULL. Defendant's motion to suppress (doc. 22) is GRANTED as set forth herein, and Defendant's motion in limine (doc. 24) is DENIED.

IT IS FURTHER ORDERED that a jury trial shall be reset in this case for July 29, 2013, at 9:00 a.m. in the Paul G. Hatfield Courthouse, Helena, Montana. The plea agreement deadline is reset for July 18, 2013. Jury instructions and trial briefs are due by July 25, 2013. The Court's order dated February 6, 2013, shall remain in full force and effect in all other respects.

Dated this 3rd day of July, 2013.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court